**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

NORRIS DION EVANS,                          :
                                            :
                  Plaintiff,                :
                                            :
        VS.                                 :
                                            :        **7 : 11-CV-29 (HL)**
SERGEANT JOE SCHNAKE,                       :
                                            :
                  Defendant.                :
_____            :

# ORDER AND RECOMMENDATION

Plaintiff, who is proceeding *pro se*, filed this action pursuant to 42 U.S.C. ▪ 1983 on March 7, 2011, alleging that Defendant used excessive force against Plaintiff, violating Plaintiff's Eighth Amendment rights.   (Doc. 2).   Presently pending in this action are Defendant's Motion for Summary Judgment, and Plaintiff's Motion for Abusive Litigation, Motion to Amend, Motion to Appoint Counsel, and Motion for Damages. (Docs. 18, 28, 29, 35, 36).

***Defendant's Motion for Summary Judgment (Doc. 18)***

## Background

Defendant filed his Motion for Summary Judgment on September 29, 2011.   On September 30, 2011, the Court notified Plaintiff of the filing of the Defendant's Motion for Summary Judgment, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order.   (Doc. 20).   Plaintiff has filed several documents in response to Defendant's Motion for Summary Judgment.   (Docs. 21, 22, 23, 24, 27).

In his Complaint, Plaintiff alleges that, while housed at Valdosta State Prison ("VSP"),

Defendant Sergeant Joe Schnake and Plaintiff exchanged words while Defendant was attempting to escort Plaintiff to administrative segregation.   (Doc. 2).   Plaintiff refused to be escorted to a different cell until he had spoken with a doctor.   According to Plaintiff, Defendant sprayed pepper spray into Plaintiff's cell, after which Plaintiff placed his hands through the door flap and allowed Defendant to handcuff him.   Plaintiff states that Defendant then entered Plaintiff's cell, punched Plaintiff multiple times in the stomach, choked and slapped Plaintiff, and then sprayed Plaintiff in the face with pepper spray.   Plaintiff alleges that after the assault Defendant escorted Plaintiff to administrative segregation, where he denied Plaintiff medical attention and did not file an incident report.   Plaintiff claims that he then attempted suicide by cutting himself in order to get the attention of the prison officials.

## Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).   All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party.   *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

2

As the party moving for summary judgment, Defendant has the initial burden to demonstrate that no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. "If a party fails to properly support an assertion of fact or fails to properly address another party=s assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials B including the facts considered undisputed B show that the movant is entitled to it" Fed R. Civ. P. 56(e)(3).

### Evidence

In arguing that he is entitled to the entry of summary judgment in regard to Plaintiff=s claim of excessive force, Defendant has submitted affidavits from himself and from various prison officials, Plaintiff=s deposition testimony, and portions of Plaintiff=s prison medical records. (Doc. 18). Defendant=s affidavit testimony shows that on August 24, 2010, Defendant and non-party Officer Craft escorted Plaintiff from the H-1 building at VSP to cell J2-50 at 10:10 p.m. (Doc. 18-3, Schnake Affidavit, ¶ 6). Defendant testified that, on August 24, 2010, Defendant did not "apply physical force to [Plaintiff]. Specifically, [Defendant] did not apply pepper spray to [Plaintiff], nor did [he] hit, choke or slap [Plaintiff.]" (*Id.* at ¶ 9).

Officer Craft did not observe Defendant "apply physical force, excessive or otherwise, to [Plaintiff]." (Doc. 18-4, Craft Affidavit, ¶ 8). Defendant's evidence further shows that Plaintiff did not complain that he was assaulted to non-party Lieutenant Sabrina Foster or non-party

3

Officer Michael McFeeters, who were both present during different stages of Plaintiff's cell

transfer.   (Docs. 18-5, Foster Affidavit, ¶ 5; 18-6, McFeeters Affidavit, ¶8).    Lieutenant Foster

and Officer McFeeters also did not observe any physical injury to Plaintiff.   (*Id.*).

      Plaintiff, however, did complain to non-party Linda Chewning, a Registered Nurse at VSP,

"that he had been choked by an officer and sprayed with an unknown substance."   (Doc. 18-7,

Chewning Affidavit, ¶ 5).   Nurse Chewning examined Plaintiff at 11:15 p.m. at his cell, and

observed "very superficial, self-inflicted scratches on [Plaintiff's] right forearm that were 3 cm and

2 cm in length."   (*Id.* at ¶¶ 4, 6).    Nurse Chewning also examined Plaintiff's neck, and

"observed no marks or other injury or signs indicating [Plaintiff] had been choked.   Specifically,

there was no redness or bruising on or around his neck."   (*Id.* at ¶ 7; Doc. 18-8).

      Due to Plaintiff's complaints that he was sprayed with an unknown substance, Nurse

Chewning also examined Plaintiff's eyes and breathing.   (Doc. 18-7, Chewning Affidavit, ¶ 8).

Plaintiff's "eyes were clear, with no redness or visible tearing."   (*Id.*).   Also, Plaintiff's

"respirations were normal and he had no trouble breathing."   (*Id.*).   Nurse Chewning testified

that if Plaintiff had been exposed to pepper spray and even had the opportunity to flush his eyes

with water, he still "would have demonstrated eye-redness or tearing for approximately twenty

four (24) hours."   (*Id.*).   Based on her observations of Plaintiff, Nurse Chewning did not see any

injuries or signs that Plaintiff had been physically assaulted or subjected to the use of excessive

force.   (*Id.* at ¶ 9).

      In response to the Defendant's summary judgment motion, Plaintiff has provided several

Responses, and in one Response included a witness statement and copies of grievances. (*See* Doc.

23).   Plaintiff has also submitted a Declaration which he signed "under penalty of perjury", as

4

well as the Declaration of Eric Butler.   (Docs. 24, 34).   The record further contains Plaintiff's

sworn deposition testimony, submitted by Defendant, with certain sections specifically pointed to

and identified by Defendant in support of his summary judgment motion. (Doc. 18-9, Plaintiff's

Depo.).   Although Plaintiff has neither incorporated this testimony by reference nor pointed to

relevant portions of the testimony in responding to Defendant's Motion for Summary Judgment,

Rule 56 clearly allows for the Court's consideration of the entire record when ruling on a motion

for summary judgment.   "The court need consider only the cited materials, but it may consider

other materials in the record."  Fed. R. Civ. P. 56(c)(3).   The notes explaining the amendment

further state that "a court may consider record materials not called to its attention by the parties."

*Id.* at hist. n. 2010 Amendments.

The Eleventh Circuit has also recognized that courts must consider the record as a whole in

ruling on motions for summary judgment.  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th

Cir. 1997) ("[w]here the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial" (quoting *Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d

994, 998 (11th Cir. 1992) ("[i]n opposing summary judgment, the nonmoving party may avail

itself of all facts and justifiable inferences in the record taken as a whole").   The Court is mindful,

as well, of Plaintiff's *pro se* prisoner status, which the Eleventh Circuit has noted entitles the

Plaintiff's pleadings and briefs to a more liberal construction.  *Brown v. Crawford*, 906 F.2d 667,

670 (11th Cir. 1990); *see also Keith v. Stewart*, 2006 WL 2298004, n. 1 (N.D. Ga. Aug. 8, 2006)

(courts are reluctant to require a *pro se* prisoner to rely on more evidence than his pleadings in

response to motions for summary judgment).   Thus, Plaintiff's sworn deposition testimony is

properly considered herein as part of the record as a whole and in deciding Defendant's Motion for Summary Judgment.

In his deposition, Plaintiff states that around 9:00 p.m. he was in the crisis unit, and was told he was going to be moved into segregation.  (Doc. 18-9, Plaintiff's Depo. p. 21, ll. 5-12). Defendant came to Plaintiff's cell, and Plaintiff refused to be moved until he spoke with a doctor. (*Id.* at p. 23 l. 21 – p. 24 l. 1).   Defendant then stuck a can of mace through the flap in the door and sprayed mace into Plaintiff's cell.   (*Id.* at p. 24, ll. 11-13, p. 26, ll. 13-15).   Plaintiff stuck his hands through the door flap, allowing Defendant to place Plaintiff in handcuffs.  (*Id.* at p. 28, ll. 24-25).   Plaintiff testified that after he was handcuffed, Defendant came into his cell, pulled Plaintiff to the back of the cell, and then hit Plaintiff in the stomach eight (8) times, choked him for four (4) minutes, slapped him across his face, and sprayed him in the face with mace.   (*Id.* at pp. 34, ll. 1-2; 36, l. 10; 37, ll. 4-6; 40, ll. 8-25; 41, ll. 6-11, 16-18; 43, l. 6).   Defendant then escorted Plaintiff to segregation.   (*Id.* at p. 44, l. 12).   Plaintiff testified that, once he was transferred to his new cell, he took a razor and began cutting himself.   (*Id.* at p. 56, ll. 9-12).

Non-party Eric Butler, an inmate who was housed at VSP at the time of the subject occurrence of August 24, 2010, signed a Declaration "under penalty of perjury".   (Doc. 34).   In his Declaration, Butler states that he saw Defendant carrying pepper spray on the date of August 24, 2010, but Butler does not indicate that he knows anything regarding the subject occurrence. (*Id.*).

Plaintiff has also included a notarized witness statement from non-party Mario Vega, an inmate who was housed in the same cell as Plaintiff after the alleged use of excessive force. (Doc. 23-6).   In the affidavit, dated February 15, 2011, Vega testifies that Plaintiff was brought

into his cell and was complaining about how "he was sprayed with pepper spray and struck in the face by [Defendant]."  (*Id.* at p. 2).   Plaintiff banged on the door to try to be placed in the shower so that he could run water in his eyes.  (*Id.*).   The floor officer ignored Plaintiff's requests, and then Plaintiff cut his arm with a razor about three times.  (*Id.* at p. 2-3).   Vega was moved to another cell once Plaintiff began receiving medical attention.  (*Id.* at p. 3).

## Discussion

The Eighth Amendment forbids cruel and unusual punishment, and this prohibition governs "the treatment a prisoner receives in prison and conditions under which he is confined."  *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003).   "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).   "[A]nalysis of an Eighth Amendment excessive force claim is contextual and requires that many factors be considered: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996) (quoting *Hudson*, 503 U.S. at 5).   "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1500 (11th Cir. 1985).

To establish a claim for excessive force, the Plaintiff must show that (1) the Defendant acted with a malicious and sadistic purpose to inflict harm and (2) that a more than *de minimis*

injury resulted.   *Fischer v. Ellegood*, 238 Fed. Appx. 428, 432 (11th Cir. 2007); *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002).   However, "[t]he "core judicial inquiry" . . . [is] not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v.   Gaddy*, 130 S.Ct. 1175, 1178 (2010) (quoting *Hudson*, 503 U.S. at 7).   Although the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

Defendant contends that he could not have used excessive force because Plaintiff had no injuries.   (Doc. 18-1).   "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.   An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-1179.   "The extent of the injury may . . . provide some indication of the amount of force applied." *Id.* at 1178.   If both parties swear to a different set of facts regarding the use of excessive force, but medical records show that there is no evidence of injury to corroborate the inmate's allegations of excessive force, a motion for summary judgment may be granted in favor of the prison officials.   *See Vicks v. Knight*, 380 Fed. Appx. 847 (11th Cir. 2010).

In *Vicks*, the parties' versions of the alleged excessive force greatly differed.   380 Fed. Appx. at 851.   To support their version of the incident, the defendants provided personal affidavits, affidavits of other prison officials, and medical records.   The inmate provided only his own affidavit.   *Id.*   Moreover, neither medical professional that examined the plaintiff after the

incident could identify any injury to the plaintiff to corroborate the allegations.  *Id.*   The Eleventh Circuit determined that the evidence provided by the defendants, the lack of evidence by the plaintiff, and the showing of no injury to the plaintiff was sufficient to prove no excessive force was used.  *Id.* at 852; *but see Logan v. Smith*, 439 Fed. Appx. 798, 802 (11th Cir. 2011) (finding that when the medical evidence and a video did not flatly contradict the plaintiff's allegations that excessive force was used, the court was left with different stories by different litigants and summary judgment was not appropriate).

Much like *Vicks*, Defendant's version of the events is corroborated by the medical records, and the affidavits of Craft, Foster, and McFeeters, who were all present during different stages of the escort process.  Officer McFeeters, who was present while the escort process began, provided evidence that pepper spray was not administered to Plaintiff, and that Plaintiff permitted himself to be handcuffed after his initial refusal.  (Doc. 18-6, McFeeters Affidavit, ¶¶ 5-7).  After Plaintiff was handcuffed, Officer McFeeters testified that he "was just outside the open door of the cell and could see both [Defendant] and [Plaintiff].  [Defendant] did not use any physical force, much less assault or use excessive force, on [Plaintiff]."  (*Id.* at ¶ 7).  Moreover, Lieutenant Foster did not observe any injuries to Plaintiff, nor did Plaintiff complain to Lieutenant Foster that he had been subjected to excessive force during the escort process.  (Doc. 18-5, Foster Affidavit, ¶¶ 5, 8).

Plaintiff submitted evidence that inmate Butler saw Defendant carrying pepper spray on the date in question, and that inmate Vega heard Plaintiff complain about being sprayed in the face with pepper spray.  (Docs. 23-6, 34).  However, Butler did not see Defendant spray pepper spray on the day in question, and specifically, Butler did not see Defendant spray pepper spray

into Plaintiff's cell or Plaintiff's eyes. Also, Vega did not testify that he saw any injury to Plaintiff's face or throat. Vega's testimony simply states what Plaintiff said to Vega regarding being sprayed with pepper spray. Plaintiff's deposition offers the only evidence that Defendant sprayed Plaintiff in the face with pepper spray on August 24, 2010, and the only evidence that Plaintiff was injured. Therefore, there is no direct evidence corroborating Plaintiff's version of the alleged excessive force incident.

Most importantly, however, is the fact that the medical records support Defendant's version of the event and contradict Plaintiff's version. Plaintiff states that the alleged incident occurred at approximately 9:00 p.m. (Doc. 18-9, Plaintiff's Depo. p. 21, ll. 9-10). The affidavit of Nurse Chewning and the medical records show that, other than the self-inflicted scratches on his forearm, Plaintiff had no visible injuries at 11:15 p.m., a little over two hours after the alleged use of excessive force. (Docs. 18-7, Chewning Affidavit, ¶¶ 4, 9; 18-8). Plaintiff testified that his whole face, including his eyes, were burning from the mace; however, the medical exam that occurred two hours after Plaintiff was allegedly sprayed with mace shows that Plaintiff's eyes were clear, with no redness or visible tearing. (Docs. 18-9, Plaintiff's Depo. p. 56, l. 3; 18-7, Chewning Affidavit, ¶ 8; 18-8). The medical evidence also shows that Plaintiff was not having difficulty breathing. (Docs. 18-7, Chewning Affidavit, ¶ 8; 18-8).

Further, Plaintiff testified that Defendant grabbed Plaintiff's larynx for four (4) minutes. (Doc. 18-9, Plaintiff's Depo. p. 41, ll. 1-13). However, the medical records show that there were no visible marks around Plaintiff's neck. (Doc. 18-8). Nurse Chewning testified that there was no redness or bruising around Plaintiff's neck. (Doc. 18-7, Chewning Affidavit, ¶ 7). The only visible injuries to Plaintiff were small cuts on his right forearm. Plaintiff admits to cutting

10

himself, the medical records indicate the wounds were self-inflicted, and Vega testified that Plaintiff cut himself about three times.   (Docs. 18-8; 18-9, Plaintiff's Depo. p. 56, ll. 9-12; 23-6). The medical evidence also indicates that routine medical rounds were conducted on August 26 at noon, approximately 39 hours after Plaintiff alleges excessive force was used against him, and Plaintiff voiced no complaints.   (Doc. 18-8).   Plaintiff did not seek medical attention after the incident of August 24, 2010 until October 5, 2010, when Plaintiff requested that he be tested for diabetes.   (Docs. 18-7, Chewning Affidavit, ¶ 10; 18-8).   On October 5, 2010, Plaintiff did not seek treatment for any injuries attributed to the alleged use of excessive force.   (Doc. 18-7, Chewning Affidavit, ¶ 10).

The testimony of the medical professional who examined Plaintiff and the medical records show that there was no injury to Plaintiff two hours after the alleged use of excessive force. Furthermore, Plaintiff did not make any complaints of physical injury during routine medical rounds 39 hours after the alleged attack, nor did he complain of injury the next time he was seen by medical in October of 2010.   The undersigned is especially persuaded by non-party Nurse Chewning's testimony that had Plaintiff been sprayed with pepper spray he would have experienced eye-redness or tearing for at least 24 hours, even if he had the opportunity to flush his eyes with water, yet Plaintiff exhibited no redness or tearing approximately 2 hours after the alleged attack.   Plaintiff has provided no evidence that he suffered from more than a *de minimis* injury.   Therefore, "a reasonable factfinder could not believe that [Plaintiff] suffered any injury, and thus could not reasonably infer that [Defendant] used anything more than a *de minimis* amount of force against [Plaintiff]." *Vicks*, 380 Fed. Appx. at 852.

The undersigned recognizes that this is a case of each party swearing to a different set of

11

facts.   However, Plaintiff's version of the alleged assault is contradicted by Defendant's affidavit,

the affidavits of the non-party jail employees, and most importantly, the medical records.   Plaintiff

has failed to provide any independent evidence that corroborates his version of the events, that

excessive force was used against him and that he suffered an injury because of it.   As such, there

is no genuine issue of material fact for a jury to determine.

**Conclusion**

Inasmuch as Plaintiff has failed to sufficiently rebut Defendant's summary judgment

showing, it is the recommendation of the undersigned that Defendant's Motion for Summary

Judgment be **GRANTED**.   Pursuant to 28 U.S.C. ▪ 636(b)(1), the parties may file written

objections to the recommendations contained herein with the Honorable Hugh Lawson, United

States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this

Recommendation.

*Motions Regarding Amending (Docs. 22, 28, 29)*

Plaintiff has filed two documents, on October 11 and November 21 of 2011, regarding

abusive litigation, and while it is unclear as to what Plaintiff is requesting, it appears Plaintiff is

attempting to amend his Complaint to add a state claim of abusive litigation against Defendant's

previous attorney, Stephen Powers.   (Docs. 22, 28).   Plaintiff also filed a Motion for Leave to

File an Amended Complaint on November 21, 2011, wherein Plaintiff appears to request Matthew

Boyer, Defendant's new attorney, be named as a Defendant in this case. (Doc. 29).

Plaintiff filed his Complaint on March 7, 2011, and on March 22, 2011, the waiver of

service and the Complaint were mailed to Defendant. (*See* Docs. 2, 7).   Defendant filed an

Answer on May 18, 2011, and filed a Motion for Summary Judgment on September 29, 2011.

12

(Docs. 8, 18).

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure,

(1) ***Amending as a Matter of Course***
A party may amend its pleading once as a matter of course within:
(A)  21 days after serving it, or
(B)  if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule12(b), (e), or (f), whichever is earlier.

(2) ***Other Amendments***
In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Plaintiff's Motions attempting to amend are clearly untimely under Rule 15(a)(1).   The Motions were filed more than twenty-one (21) days after the Complaint was served and more than twenty-one (21) days after service of a responsive pleading, the Answer.   Additionally, Defendant has not consented to Plaintiff's proposed amendment.   Therefore, Plaintiff's only remaining means to amend his Complaint is by leave of the Court under Rule 15(a)(2).

The decision whether to grant leave to amend a pleading is within the sound discretion of the district court and is not automatic.  *Nat'l. Service Industries, Inc. v. Vafla Corp*, 694 F.2d 246, 249 (11th Cir. 1982).   Although the decision to grant or deny a motion to amend a complaint is within the discretion of the Court, "a justifying reason must be apparent for denial of a motion to amend."  *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993).   The Court may consider "such factors as 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of the amendment.'"

13

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Plaintiff filed these Motions more than seven months after filing his Complaint.   The first attempt to amend was filed about eight weeks after discovery had ended (Doc. 22), and the second and third attempts to amend (Docs. 28, 29) were filed more than three months after discovery had ended.   Further, the first attempt to amend (Doc. 22) was filed twelve days after Defendant filed his Motion for Summary Judgment, and the most recent Motions attempting to amend (Docs. 28, 29) were filed almost eight weeks after Defendant filed his Motion for Summary Judgment.   If Plaintiff was allowed to amend at this late date, it would cause undue delay and prejudice as two new Defendants would be added after discovery had ended and after a Motion for Summary Judgment had been filed.   *See Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (affirming a denial of a motion for leave to amend when the motion was accompanied with a response to the defendants' motion for summary judgment and was filed seven weeks after the close of discovery);   *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided.").

Furthermore, the Court notes that Plaintiff has failed to state a claim of abusive litigation against Stephen Powers or Matthew Boyer.   In fact, it is difficult to discern what Plaintiff is alleging, and against whom he is alleging a claim of abusive litigation.   Plaintiff has simply restated portions of the Official Code of Georgia Annotated regarding abusive litigation, and asked that Stephen Powers be served (Doc. 22) and that Matthew Boyer be added (Doc. 29). Plaintiff has not alleged any facts in his Motions which provide a basis for the claim of abusive litigation.   Therefore, Plaintiff has not provided any basis to amend his Complaint, and the new

14

claim is futile.

As the amendment would cause unnecessary delay and undue prejudice to Defendant, and the proposed claim is futile, Plaintiff's Motions requesting to add a claim of abusive litigation against Stephen Powers and Matthew Boyer (Docs. 22, 28, 29) are hereby **DENIED**.

### Motion to Appoint Counsel (Doc. 35)

Plaintiff filed a second Motion for Appointment of Counsel on January 13, 2012. Generally speaking, no right to counsel exists in § 1983 actions.   *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985); *Mekdeci v. Merrel Nat'l. Lab.*, 711 F.2d 1510, 1522 n.19 (11th Cir. 1983). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982); *Branch v. Cole,* 686 F.2d 264, 266 (5th Cir. 1982); *Ulmer v. Chancellor,* 691 F.2d 209 (5th Cir. 1982).

In deciding whether legal counsel should be provided, the Court typically considers, among other factors, the merits of Plaintiff's claim and the complexity of the issues presented.   *See Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989).   Applying the standards set forth in *Holt*, it appears that at the present time, the essential facts and legal doctrines in this case are ascertainable by Plaintiff without the assistance of Court-appointed legal counsel and that the existence of exceptional circumstances has not been shown by Plaintiff.

The Court notes that Plaintiff has previously submitted a Motion for Appointment of Counsel, which was denied.   (Docs. 15, 19).   The new Motion for Appointment of Counsel does not set forth any exceptional circumstances that would persuade the Court to now appoint counsel for Plaintiff.   The Court on its own motion will consider assisting Plaintiff in securing

legal counsel if and when it becomes apparent that legal assistance is required in order to avoid prejudice to his rights. Accordingly, Plaintiff's Motion for Appointment of Counsel is **DENIED** at this time.

*Motion for Damages (Doc. 36)*

It appears Plaintiff has filed this Motion for Damages asserting that he should be awarded compensatory damages, punitive damages, and attorney's fees.   Plaintiff has asserted a claim for damages in his Complaint, and thus, it is not necessary to file a Motion for Damages. Furthermore, even if Plaintiff's claim was successful, he is not entitled to attorney's fees, as he is filing *pro se*.   *Cofield v. City of Atlanta*, 648 F.2d 986 (5th Cir. 1981).   Moreover, the Court has recommended that Defendant's Motion for Summary Judgment be granted, as Plaintiff has failed to show that there exists a genuine issue of material fact in this case.   As such, Plaintiff's Motion for Damages is hereby **DENIED**.

**SO ORDERED AND RECOMMENDED**, this 24th day of April, 2012.


s/ *THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**

llf

16